I,MAX N. TOBIAS, JR., Judge.
Sergeant Joseph Hebert (“Sgt.Hebert”) appeals a 26 April 2001 ruling of the Civil Service Commission (“the Commission”), which summarily dismissed his appeal of a letter of reprimand.
Sgt. Hebert has achieved permanent status in the classified city service. By letter dated 6 December 2000, the New Orleans Police Department (“the NOPD”), through Superintendent Richard Pennington, informed Sgt. Hebert that an administrative investigation had revealed that he had worked one authorized paid detail at a Walmart and twelve authorized paid details at the Sewerage and Water Board without causing his name to be entered into the detail logbook of the district within which the details were located, in violation of a departmental rule regarding Instructions from an Authoritative Source. The letter stated that following a hearing held before Bureau Chief Ronald Serpas (“Chief Serpas”) on 9 November 2000, at which Sgt. Hebert offered nothing which would tend to mitigate, justify, or explain his behavior, Chief Serpas had recommended that the violation be sustained and that Sgt. Hebert receive a letter of reprimand and loss of detail privileges for thirty days. In a letter dated 6 December 2000, Superintendent Pennington informed Sgt. Hebert that he was imposing the recommended penalty. |?The letter closed by advising Sgt. Hebert that “any future violations of a similar nature will result in far more severe disciplinary action taken by this office.”
Sgt. Hebert timely appealed the action taken against him to the Commission. Upon receiving notice of that appeal, the NOPD filed a Motion for Summary Disposition. Therein, it argued that Sgt. Hebert’s appeal should be dismissed on the grounds that “this Commission has continuously excluded from review those disciplinary actions, which have resulted in letters of reprimand.” In addition, the NOPD, citing Sterling v. Board of Commissioners, 527 So.2d 1122 (La.App. 1 Cir.1988), asserted that a civil service commission lacks jurisdictional authority to render a decision regarding the private employment of civil servants on off-duty hours. Sgt. Hebert opposed the NOPD’s motion, arguing that a letter of reprimand constitutes a “disciplinary action” subject to appeal to the Commission pursuant to Article X of the Louisiana Constitution of 1974. The NOPD filed a reply memorandum, to which Sgt. Hebert filed a response wherein he requested that the Commission grant oral argument in the matter.
The Commission denied Sgt. Hebert’s request for oral argument and on 26 April 2001, rendered the following decision:
Appellant has appealed a letter of reprimand and the suspension of private detail privileges. The Commission has reviewed the pleadings filed by the parties. The actions which appellant is appealing are not set forth as disciplinary actions by the Rules of the Commission and therefore cannot be appealed to the Commission. The Motion for Summary Disposition is hereby granted and the case is dismissed.
Sgt. Hebert filed this appeal in response to that decision. In addition, Sgt. Hebert *347 filed a Petition for Review and Damages in the Civil District Court as a protective measure.[1]
1 ¡Although no specific rule was referenced in the Commission’s decision that summarily dismissed Sgt. Hebert’s appeal, it was apparently relying on Rule II, Section 4, paragraph 4.1, relative to appeals,[2] which provides, in pertinent part, as follows:
Regular employees in the classified service shall have the right to appeal disciplinary actions to the Commission, including dismissal, involuntary retirement, demotion, suspension, fine or reduction in pay. However, a demotion, reinstatement to a lower classification, transfer, reduction in pay or layoff resulting from the application of the provisions of Rule XII governing layoffs shall not be considered a disciplinary action and this shall not warrant an appeal .... (amended June 10, 1982; May 19, 1888[sie], effective June 1, 1988). [emphasis added]
Additionally, the letter of reprimand sent to Sgt. Hebert by the appointing authority mentioned that his conduct was contrary to the standards prescribed by Commission Rule IX, entitled Disciplinary Actions. We believe that this rule is also relevant to the question before us. Section 1, paragraph 1.1 of that Rule, relative to Maintaining Standards of Service, provides as follows:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service, or has omitted to perform any act it was his/ her duty to perform, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. The action may include one or more of the following:
(1) removal from the service.
(2) involuntary retirement.
(3) reduction in pay within the salary range for the employee’s classification, subject to the provisions of Rule IV, Section 8.
(4) demotion to any position of a lower classification that the employee is deemed by the appointing authority and the Director to be competent to fill, |4accompanied by a reduction in pay, which is within the salary range for the lower classification, subject to the provisions of Rule IV, Section 8.
(5) suspension without pay not exceeding one hundred twenty (120) calendar days.
(6) fine.
(as amended June 10, 1982, effective June 10,1982)[emphasis added]
The Commission’s jurisdiction is found in Article X of the Louisiana Constitution of 1974 (“the Constitution”). Article X, § 8 of the Constitution provides as follows:
No person who has gained permanent status in the classified state or city civil *348 service shall be subjected to disciplinary action except for cause expressed in writing. A classified employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the appointing authority, [emphasis added]
Article X, § 12(B) of the Constitution, in turn, provides:
Each city commission established by Part I of this Article shall have the exclusive power and authority to hear and decide all removal and disciplinary cases, with subpoena power and power to administer oaths. It may appoint a referee to take testimony, with subpoena power and power to administer oaths to witnesses. The decision of a commission shall be subject to review on any question of law or fact upon appeal to the court of appeal wherein the commission is located, upon application filed with the commission within thirty days after its decision becomes final, [emphasis added]
The term “disciplinary action” is not defined in the Constitution.
Sgt. Hebert lists two assignments of error in this appeal. First, he alleges that the Commission committed an error of law when it denied his right to appeal the letter of reprimand. Second, he alleges that the appointing authority erred in disciplining him with a letter of reprimand.[3]
lfiSgt. Hebert argues that letters of reprimand are standard forms of discipline within the NOPD and are almost always the first level of disciplinary action taken by the Department. He states that while such letters were previously only temporarily placed in a civil servant’s record, their temporary nature was abandoned when the current administration came into office at the Department, and the letters have become permanent on a police officer’s records. Sgt. Hebert added that the letters are often used as “first offenses” at subsequent disciplinary hearings for the purpose of sentence enhancement and that the letters have been used against an officer when deciding on a promotion and other career enhancement, thereby affecting an officer’s retirement and pension. Finally, he states that letters of reprimand have been cited by the NOPD as the reason for transferring an officer into a less desirable position with lower pay and fewer benefits. In sum, Sgt. Hebert argues that letters of reprimand are “disciplinary actions” from which appeals to the Commission are constitutionally allowed, especially when a letter orders further disciplinary action, which in this case was the suspension of detail privileges for thirty days.
Citing Head v. Department of Highways, 166 So.2d 346 (La.App. 1 Cir.1964), Sgt. Hebert asserts that the constitutionally created jurisdiction of the Commission cannot be extended or limited by the Commission’s own self-made rules. The First Circuit in Head stated that:
“The jurisdiction of the Commission must be adjudged upon the Constitutional provisions and cannot be affected by the enactment of any rule, even though the Commission does have rule-making power in connection with its prescribed duties. The rule-making power, [sic] was never intended to allow the Commission by rule to change the boundaries of its jurisdiction as set forth in the Constitution.In order to ascertain the jurisdiction of the Commis *349 sion, the constitutional provision fixing such jurisdiction is the one and only source.”
id., 166 So.2d at 349.
Accordingly, the court declared unconstitutional Commission Rule 12.9, which provided that “[i]f a classified employee is retired he is considered as separated without prejudice and does not have a right of appeal to the Commission.” The court found Rule 12.9 to be unconstitutional on its face because it attempted to fix the jurisdiction of the Commission and to deny the right of appeal to a classified employee who was removed and under the law had a perfect right to question such removal as being without legal right or just cause. Id.
In addition, Sgt. Hebert claims that the NOPD’s action of suspending him from working paid details for thirty days was also a “disciplinary action” within the Commission’s exclusive constitutional grant of jurisdiction. He argues that Sterling, supra, cited to the Commission by the NOPD for the proposition that the Commission lacks jurisdiction to render a decision regarding the private employment of off-duty officers, is distinguishable to the case at hand for several reasons. First, he alleges that paid details are strictly controlled by and must be approved by the Department. In addition, he claims that paid details are specifically defined by the NOPD’s rules, in Administrative Standard Operation Procedure (“ASOP”) 85.0 [4], as not being “outside employment.”
|7The NOPD contends that a letter of reprimand is not an appealable disciplinary action pursuant to the jurisdiction granted to the Commission in Article X, §§ 8 or 10 of the Constitution or Rule II, Section 4, paragraph 4.1 of the Commission. Instead Mt characterizes a letter of reprimand as a legitimate exercise of managerial discretion that allows the Appointing Authority to correct minor problems before they *350 grow into major ones. The NOPD alleges that the utility of a letter of reprimand as a managerial tool would be impaired if such is held to be an appealable personnel action. The NOPD does not dispute that the temporary nature of letters of reprimand has been abandoned and, in fact, admits that it has opted to maintain written reprimands in an officer’s file since the 1990’s. It stated, however, that the “mere theoretical effect” of the letter of reprimand on possible promotions or future employment is too abstract to constitute a property interest or to otherwise justify a right to an appeal.[5]
|sIn addition, the NOPD claims that allowing letters of reprimand to be appeal-able will open the floodgates of litigation to the Commission and to this Court.
In support of its arguments, the NOPD' relies primarily on the case of McGuire v. Department of Aging, 140 Pa.Cmwlth. 378, 592 A.2d 830 (1991). The Commonwealth Court of Pennsylvania held therein that written reprimands were not appealable personnel actions under Pennsylvania’s Civil Service Act.
In opposition to Sgt. Hebert’s claim that ASOP 85.0 specifically defines paid details as not being “outside employment,” the NOPD argues that the rule actually provides the exact opposite. Further, because an officer is required to take action when confronted with a crime in progress even when off-duty, the Appointing Authority is justified in exercising limited control over when, where, and what type of paid detail or other outside employment its officers are working.
We initially note that we agree with the First Circuit’s pronouncement in Head that the provisions of the Louisiana Constitution fixing the jurisdiction of the Commission are the one and only source relevant to ascertaining the jurisdiction of the Civil Service Commission. Accordingly, McGuire is irrelevant to the determination of the jurisdiction of the Commission.
' Article X, § 8 of our Constitution provides that no permanent status city civil service employee shall be subjected to “disciplinary action” except for cause expressed in writing and that any employee subjected to such disciplinary action shall have the right of appeal to the appropriate commission. As we noted earlier, the Constitution contains no definition of disciplinary action. Commission Rule II, Section 4, paragraph 4.1, provides that regular employees in the classified service shall have the right to appeal disciplinary actions to the Commission including 19dismissal, involuntary retirement, demotion, suspension, fine, or reduction in pay. Similarly, Commission Rule IX, Section 1, paragraph 1.1 provides that the Appointing Authority shall take action warranted by the circumstances to maintain the standards of effective service and that such action may include the six actions listed in the previous sentence. By their use of the words “including” and “may include,” neither Commission Rule II nor Rule IX purports to list the exclusive forms of disciplinary action that can be taken by an Appointing *351 Authority against a regular employee and to which that employee would have a right of appeal to the Commission. The fact that the Commission may have had a longstanding rule to exclude disciplinary actions resulting in letters of reprimand from its review is irrelevant. While that practice may have been justified in the past when the written reprimands were only temporary in nature, it is no longer appropriate since reprimands have become a permanent part of a police officer’s files. Even if we were to rely on McGuire as persuasive authority, a careful reading of that opinion reveals that it actually supports the position advocated by Sgt. Hebert. The McGuire court noted that the written reprimands at issue therein were remedial in nature and were removed from the employee’s file after one year if no further incidents warranting discipline occurred. It distinguished those written reprimands from performance evaluation reports, which remained in an employee’s file and affected future promotions, assignments, and “in a very real sense” the future of an employee’s career and thus, “with good reason,” were appealable personnel actions. McGuire, 140 Pa.Cmwlth. at 382-384, 592 A.2d at 832.
In addition, the McGuire court held that “should a future appealable personnel action be based, in whole or in part, on the letter of reprimand, petitioners would be entitled to challenge the reprimand ancillary to the properly |inappealed personnel action.” McGuire, 140 Pa.Cmwlth. 378 at 386, 592 A.2d at 833.
Although the NOPD asserts that Sgt. Hebert has the same procedural safeguards as that found in Pennsylvania, it points to no analogous jurisprudential or Commission rule similar to the one announced in McGuire that would permit a later ancillary attack upon a letter of reprimand if it were used as a basis for a future appealable disciplinary action. We hold that, due to the present permanent nature of a letter of reprimand, a reprimand may be challenged when the underlying charges and evidence relative to those charges are fresh.
In reaching this conclusion, we are mindful that in Roby v. Department of Finance, 496 So.2d 1096 (La.App. 4 Cir. 1986), we stated in dicta that “[t]he Commission correctly declined to consider the May 8, 1984 reprimand in its decision as reprimands are not appealable to the Civil Service Commission.” As we made that statement when a letter of reprimand was only temporary in nature, it is not particularly relevant today when a letter of reprimand has attained a permanent place in an officer’s file.
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Newman v. Department of Fire, 425 So.2d 753 (La.1983); Stevens v. Department of Police, 2000-1682 (La.App. 4 Cir. 5/9/01), 789 So.2d 622. The Commission should give heightened regard to appointing authorities that serve as special guardians of the public’s safety and operate as quasi-military institutions where strict discipline is imperative. Stevens, supra at p. 8, 789 So.2d at 627. The Commission is in the best position to determine whether any disciplinary action |1Ttaken is within the appointing authority’s legal discretion, and the Commission’s determination is subject to appellate review by this Court.
The risk that our holding is likely to increase the number of appeals taken to *352 the Commission is not material to this Court.
Finally, Sgt. Hebert’s argument that paid details are not outside employment and thus any NOPD action suspending him from working paid details is within the Commission’s constitutional grant of jurisdiction is unpersuasive. He has failed to offer any support of his strained interpretation that ASOP 85.0 specifically defines paid details as not being outside employment. Our reading of that provision indicates that while there are separate definitions for “paid details” and “outside employment,” they both refer to the off-duty employment of officers. In fact, paragraph 4 of ASOP 85.0 states that “[a]ll requests for outside employment including details must be made to and approved by the Superintendent of Police before they begin.” [emphasis added]. Accordingly, we hold that any suspension of detail privileges is beyond the Commission’s constitutional grant of jurisdiction.
The decision of the Civil Service Commission of the City of New Orleans denying Sgt. Hebert’s appeal of the letter of reprimand issued to him by the NOPD is reversed and the matter is remanded so an appeal may be heard on the merits. Because we hold that the suspension of paid details is not included in the Commission’s constitutional grant of jurisdiction, the Commission need not address that aspect of the letter of reprimand.

REVERSED AND REMANDED.

. While Sgt. Hebert believes that an appeal to this court is the correct procedural vehicle, he notes that in a similar case pending in this court, the NOPD has argued that the denial of an appeal by the commission is not appeal-able to this court, but instead must be appealed to the district court. As this issue had not been resolved by this court, Sgt. Hebert filed suit in the district court in addition to pursuing this appeal.

. This rule was specifically referred to by the NOPD in its brief to this Court. Although the NOPD incorrectly labeled it as Rule 4.1, it is clear from the copy of the rule attached to its brief to this court that the NOPD was actually referring to Rule II, Section 4, paragraph 4.1.

. We decline to address this assignment of error, as this court is not the court of original review regardless of who prevails in this appeal.

. ASOP 85.0 provides:

PURPOSE

The purpose of this ASOP is to establish guidelines for the working of details and outside employment by Department members.

DEFINITIONS

1. Paid Detail: A paid detail is the employment of any commissioned member of the Department by another individual, business, establishment, or organization where the member is privately paid and is primarily performing the duties of a police officer, either in plainclothes or in uniform.
2. Outside Employment: Outside Employment is the employment of any member of the Department by another individual, business, establishment, or organization, or on a self-employed basis, where the member is privately paid and is primarily performing duties of a non-police function.
3. As indicated on the Paid Detail/Outside Employment Authorization Form, paid details and outside employment are classified into four different categories: short term paid detail, permanent paid detail, short term outside employment, and permanent outside employment. Short term paid details and short term outside employment refer to details and outside employment worked on a non-recurring schedule. Permanent paid details and permanent outside employment refer to paid details and outside employment worked on a recurring schedule for the same employer.

GENERAL

4.Members wishing to work any paid details or engage in outside employment shall complete a New Orleans Police Paid Detail/Outside Employment Authorization Form #21 prior to working the paid detail/outside employment. Paid Detail/Outside Employment Authorization Forms are available in each unit and the Personnel Division and shall be completed and disseminated as indicated on the form. All requests for outside employment including details must be made to and approved by the Superintendent of Police before such employment may begin.

. In response to this argument, Sgt. Hebert counters that, in his particular case, after receiving the letter of reprimand, he was transferred to a less prestigious assignment within the Department resulting in his receiving less pay, less authority, and the loss of use of an unmarked police vehicle. He alleges that Major James Treadway, his Commander at the Public Integrity Division, explained to him that he must be transferred because disciplinary action had been taken against him. Although Sgt. Hebert admits that these "facts” are not properly before this Court, he offers them in response to the NOPD’s assertion that he has yet to suffer any actual loss as a result of the letter of reprimand and he asks that his appeal be granted so that he may present such evidence to the Commission.